UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KAITLYN G. PATE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 3:19-CV-461-HAB |
| | ) |
| ANDREW SAUL, COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
|    Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Kaitlyn G. Pate's ("Pate") Brief in Supoort of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration (ECF No. 18), filed on January 13, 2020. Defendant Andrew Saul, Commissioner of Social Security (the "Commissioner") filed his Memorandum in Support of Commissioner's Decision (ECF No. 22) on March 23, 2020. Pate filed no reply brief. This matter is now ripe for review.

**A.     Procedural History**

Pate filed her application for Title XVI Supplemental Security Income disability benefits on April 18, 2016, alleging that she had been disabled since March 1, 2015. Pate subsequently changed the onset date to April 18, 2016. The claim was denied initially on June 27, 2016, and on reconsideration on September 21, 2016. At Pate's request, a hearing was held before an administrative law judge ("ALJ") on April 10, 2018.

The ALJ issued his Decision on Pate's application on August 1, 2018 (the "Decision"), finding that Pate was not disabled. Pate filed her Request for Review of Hearing Decision with the Appeals Council on February 11, 2019. That Request was denied on April 8, 2019. Thereafter, Pate initiated this action for judicial review through the filing of her Complaint on June 12, 2019.

**B.     Legal Analysis**

**1.     *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v.*

*Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2.    *The ALJ's Decision***

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ determined that Pate had not engaged in substantial gainful activity since April 18, 2016. At step two, the ALJ found that Pate had the following severe impairments: Ehlers-Danlos syndrome with tachycardia, chronic pain syndrome, degenerative disc disease, history of left shoulder and left knee arthroscopic surgeries, obesity, asthma, vision disorder, anxiety, affective disorder, learning disorder, and attention deficit disorder. The ALJ also found that Pate suffered from the following non-severe impairments: migraines, menstrual cramps, personality disorder, and history of marijuana use.

At step three, the ALJ find that Pate did not have ""an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. 15). The ALJ considered several listings, including listings 1.02, 1.04, and 3.03. The ALJ further considered mental health impairment listings 12.04, 12.06, and 12.11.

At step four, the ALJ found that Pate had the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except she can frequently handle and finger with both hands. She can occasionally reach overhead with both upper extremities, occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch. She can occasionally work in dust, odors, fumes, and pulmonary irritants, but she can never climb ladders, ropes, or scaffolds, never crawl, and never work at unprotected heights. She is limited to performing simple, routine tasks, and she is limited to making simple work-related decisions. She can never work outdoors in bright sunshine or with bright or flickering lights, such as would be experienced in welding or cutting metals. Every 60 minutes, she must be allowed to shift positions, or alternate between sitting and standing for one to two minutes at a time, while remaining on task.

(R. 17). Finally, at step five, the ALJ found that Pate had no past relevant work but concluded that there were jobs that exist in significant numbers in the national economy that Pate could perform. As a result, the ALJ concluded that Pate was not disabled.

### 3. *The RFC is not "Illogical"*

Pate's first argument states that the RFC, and particularly that part that finds that Pate can occasionally climb stairs, balance, stoop, kneel, and crouch, is "illogical." Pate points to her Ehler's Danlos Syndrome, morbid obesity, degenerative disc disease, and knee and shoulder problems as evidence that she could not perform these postural tasks. Thus, Pate argues, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion.

On one hand, the Court does find it difficult to imagine that Pate could perform the tasks inherent in the RFC given her laundry list of physical conditions. Pate testified at her hearing that she suffers regular joint dislocations as a result of her Ehler's Danlos Syndrome, including dislocations of her hips, shoulders, and wrists. As a result, Pate cannot lift anything heavier than a milk jug and has difficulty standing for long periods of time. Pate testified that her condition makes it hard for her to care for herself and her son, and further that "work just is not an option for me anymore." (R. 50).

On the other hand, Pate points the Court to no medical evidence substantiating her claims of disability. The Court has reviewed each and every medical record identified by Pate in support of her claim that the RFC is illogical. (R at 15–16, n. 44–48). At most, these records confirm that Pate has been diagnosed with the various conditions she claims are disabling. However, the diagnosis of one, or even multiple, conditions is not "*ipso facto* evidence" that an individual is disabled. *Schmidt v. Barnhart*, 395 F.3d 737, 745–46 (7th Cir. 2005). "The issue in the case is not the existence of these various conditions of hers but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

5

Given Pate's failure to point to any compelling medical evidence to the contrary, the Court finds that the ALJ built the required logical bridge from the record to the RFC. The ALJ thoroughly reviewed Pate's medical records, documenting evidence both supporting and undermining the RFC. After that review, the ALJ determined that the postural limitations in the RFC were sufficient to accommodate the restrictions contained in the records. The Court may have reached a different decision, but where "reasonable minds could differ concerning whether [an applicant] is disabled," the ALJ's determination must be affirmed. *Simila v. Astrue*, 573 F.3d 503, 513–14 (7th Cir. 2009). So it is here.

**4.** *The ALJ Adequately Addressed Pate's Limitations in Concentration, Persistence, and Pace ("CPP")*

Pate's final argument claims that the RFC's limitations to "simple" and "routine" tasks fails to adequately account for her limitations in CPP. Pate, like many other claimants making the same argument, relies on *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014). While it is true that *Yurt* disapproves of catch-all terms like "simple" and "routine," more recent case law clarifies that any error in using these terms is harmless unless the record demonstrates that additional work restrictions are required to address the claimant's CPP limitations. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Pate's brief to this Court identifies no additional restrictions that she feels would more appropriately address her limitations with respect to CPP. Pate's testimony is limited in this respect as well; she testified that she has difficulty when she has "too many things thrown at [her] at once," but otherwise her testimony is unremarkable. (R. 56). Given this paucity of evidence or argument, the Court finds that any error committed by the ALJ in using the "simple" and "routine" language was harmless. *Jozefyk*, 923 F.3d at 498.

6

**C.     Conclusion**

For the foregoing reasons, the Decision (R. 15–26) is AFFIRMED.

SO ORDERED on September 14, 2020.

                                             s/ Holly A. Brady
                                             JUDGE HOLLY A. BRADY
                                             UNITED STATES DISTRICT COURT